IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES A. M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00372-JED-SH |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff James A. M. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. For the reasons explained below, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **REVERSED** and the case **REMANDED** for further proceedings.

### I. Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that he is not only unable

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

On June 18, 2019, Plaintiff applied for Title II benefits, with a protective filing date of June 4, 2019. (R. 19, 161-62.) Plaintiff alleges that he has been unable to work since November 3, 2009, due to nerve damage in his spine, posttraumatic stress disorder ("PTSD"), a nerve problem in his legs, headaches, high blood pressure, sleep apnea, and neuropathy in his feet and hands. (R. 161, 178.) Plaintiff was 51 years old on the date of the ALJ's decision. (R. 30, 161.) He has a college education and past work as a tank truck driver, border agent, and light truck driver. (R. 64-65, 179.)

Plaintiff's claim for Title II benefits was denied initially and on reconsideration, and he requested a hearing. (R. 69-89, 93-101.) ALJ Deirdre O. Dexter conducted an administrative hearing and issued a decision on March 19, 2020, finding Plaintiff not disabled. (R. 19-30, 35-68.) The Appeals Council denied review on May 27, 2020 (R. 1-5), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on July 29, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of November 3, 2009, through his date last insured of December 31, 2014. (R. 21.) At step two, the ALJ found Plaintiff had the severe impairments of spine disorder, left knee meniscus tear status post-surgery, depression, and PTSD. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 22-23.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional non-exertional physical limitations and the following mental limitations:

> He was able to perform simple, routine tasks. The claimant was able to interact with supervisors as needed to receive work instructions; was able to work in proximity to co-workers but job should not involve close communication or cooperation with co-workers in order to complete work tasks; and job should not have involved interacting with the general public.

(R. 23.) The ALJ provided a detailed analysis of the evidence that went into this finding. (R. 23-28.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work. (R. 28.) At step five, however, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including touchup screener, document preparer, and addresser. (R. 28-29.) The ALJ thus found Plaintiff was not disabled. (R. 29-30.)

### IV. Issues

Plaintiff asserts the ALJ's findings at step five are not supported by substantial evidence, because there is a conflict between the ALJ's RFC limitation of "simple, routine

4

tasks" and the reasoning development levels assigned by the Dictionary of Occupational Titles ("DOT") to the jobs the VE identified—namely levels two and three. (ECF No. 12 at 3-8.) Alternatively, Plaintiff asserts that even if there is a conflict only as to the level-three reasoning job, the ALJ's decision was not supported by substantial evidence. That is, the ALJ never determined that a significant number of the level-two reasoning jobs exists in the national economy. (*Id*. at 8-9.)

V.  **Analysis**

All of Plaintiff's arguments relate to step five. Because Plaintiff met his burden of showing that he could not perform his past relevant work, the Commissioner had the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000).[2]

In this case, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three sedentary, unskilled jobs a hypothetical person with Plaintiff's age, education, and work history could perform: touch-up screener, document preparer, and addresser. (R. 23, 65-66.) The VE testified that there were an estimated 69,000 touch-up screener jobs; 45,000 document-preparer

---

[2] In *Qualls*, the court found, where "the ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id*.

jobs; and 59,000 addresser jobs in the national economy. (R. 66.) Based on this testimony, the ALJ concluded that Plaintiff could perform these three jobs and that the jobs (totaling 173,000) existed in significant numbers in the national economy.[3] (R. 28-29.) The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (R. 29.)

### A.   Conflict Between the DOT and the VE's Testimony

While an ALJ can rely on the VE's expert testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.").

Although the VE summarily testified that all her testimony was consistent with the DOT (R. 66), the ALJ must explain the resolution of a conflict "irrespective of how the conflict was identified," SSR 00-4p, at *4. *See also Haddock,* 196 F.3d at 1090 ("To allow

---

[3] The ALJ's decision contains an apparent scrivener's error as to the number of addresser jobs available in the United States. (R. 29.) The VE testified that there were approximately 59,000 addresser jobs in the national economy, but the ALJ recorded this number as 59,999 in her decision. (R. 29, 66.) The ALJ's inclusion of an additional 999 addresser jobs in the national economy does not affect the undersigned Magistrate Judge's analysis.

6

an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant."). The ALJ did not identify or resolve any conflicts before relying on the VE's testimony and determining it was consistent with the DOT. Therefore, if a conflict exists, the ALJ improperly relied upon the VE's testimony. The question remains—does the conflict exist? For one of the jobs—document preparer—the undersigned finds that it does. As to the other two jobs, the undersigned finds no conflict.

        1.        **The ALJ's RFC Determination is Inconsistent with Reasoning Level Three.**

In this case, the conflict between the VE's testimony and the DOT relates to the listed jobs' "reasoning level" as applied to the mental limitations in the RFC. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

Of the three jobs relied upon by the ALJ, one—document preparer—is assigned a reasoning level of three by the DOT. DOT § 249.587-018, 1991 WL 672349. This means the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* For purposes of this case, the parties agree that the RFC limitation of "simple, routine tasks" is

7

inconsistent with jobs requiring a reasoning level of three. (ECF No. 12 at 4; ECF No. 21 at 5.)

The parties are correct. The Tenth Circuit has stated that an RFC limitation of simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," reversing and remanding to allow the ALJ to address this "apparent conflict." *Hackett,* 395 F.3d at 1176. The same apparent conflict exists in this case. The RFC limited Plaintiff to "simple, routine tasks," yet the VE identified a job in the DOT requiring a reasoning level of three. Because the ALJ was required to, but did not, elicit additional testimony from the VE explaining such conflict, the ALJ erred in determining Plaintiff could perform the representative job of document preparer.

### 2. The ALJ's RFC Determination is Consistent with Reasoning Level Two.

The other two jobs identified by the VE—touchup screener and addresser—have a GED reasoning level of two. DOT § 726.684-110, 1991 WL 679616 (touchup screener); DOT § 209.587-010, 1991 WL 671797 (addresser). Plaintiff argues that the RFC limitation of "simple, routine tasks" is also inconsistent with jobs requiring this reasoning level, and that the ALJ erred by failing to resolve this alleged conflict. (ECF No. 12 at 5-6.) Here, the undersigned disagrees.

Reasoning level two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT §§ 209.587-010, 726.684-110. As the Tenth Circuit noted in *Hackett*, "level-two reasoning appears more consistent" with an RFC requiring "simple and routine work tasks." 395 F.3d at 1176. While the *Hackett* statement was arguably dicta, the Tenth Circuit later cited it for the proposition that "a limitation for simple and routine work tasks was . . .

8

consistent with the demands of level two reasoning . . . ." *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (cleaned up).[4] Based on this finding, the court in *Stokes* rejected the Plaintiff's argument "that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one." *Id.* (affirming where "[a]ll of the jobs considered by the ALJ had a reasoning level rating of two").

Plaintiff, however, relies on a case from this District in which Judge John E. Dowdell found persuasive the argument that "an RFC requiring 'simple, repetitive tasks' is more consistent with level 1 reasoning . . . ." *Ashley C.O. v. Saul,* No. 17-CV-675-JED-GBC, 2020 WL 5229701, at *2 (N.D. Okla. Sept. 2, 2020) (Dowdell, C.J.). In *Ashely C.O.*, Judge Dowdell did not find an "apparent conflict" in this evidence, but he did find a "potential conflict." *Compare id.* at *1 (noting "apparent conflict" with level-three reasoning job) *with id.* at *2 (noting "potential conflict" with level-two reasoning job).[5] Judge Dowdell then reversed and remanded, directing the ALJ to address the apparent conflict between the RFC and the level-three reasoning jobs, as well as the potential conflict with the level-two reasoning job. *Id.* at *2. In reaching such conclusion, Judge Dowdell noted that the Court's statement in *Hackett* regarding jobs with a level-two reasoning requirement was dicta, because the jobs at issue in that case all required level-three reasoning. *Id.* Judge Dowdell also cited with approval the following statement from the Tenth Circuit's unpublished decision in *Paulek v. Colvin*:

> [W]e have previously held that a limitation to "simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning."

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[5] Judge Dowdell made a similar ruling in *Linda M.P. v. Saul,* No. 17-CV-409-JED-GBC, 2020 WL 2840243, at *2 (N.D. Okla. June 1, 2020).

9

> *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) . . . . While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning. *See Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir. 1997).

*Paulek v. Colvin,* 662 F. App'x 588, 594 (10th Cir. 2016) (quoted in *Ashley C.O.*, 2020 WL 5229701, at *2).[6]

The decision in *Ashley C.O.* is an outlier in this District. *See, e.g., Peggy S.C. v. Kijakazi,* No. 19-CV-0387-CVE-JFJ, 2021 WL 4148089, at *8 (N.D. Okla. Sept. 13, 2021) (Eagan, J.); *Hopkins v. Saul,* No. 18-CV-335-TCK-JFJ, 2020 WL 616165, at *3 (N.D. Okla. Feb. 10, 2020) (Kern, J.); *Carolyn Y. v. Berryhill,* No. 17-CV-286-GKF-FHM, 2018 WL 5660752, at *4 (N.D. Okla. Sept. 12, 2018) (Frizzell, C.J.); *Rainwater v. Colvin,* No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) (McCarthy, M.J.), *R. & R. adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). In *Hopkins*, Judge Terence C. Kern found that "no conflict exists between Plaintiff's RFC limitation to performance of only 'simple, repetitive tasks' and the level two reasoning required by the jobs identified by the vocational expert." 2020 WL 616165, at *3 (citing *Hackett* and *Stokes* as rejecting the contrary argument). In *Carolyn Y.*, Judge Gregory K. Frizzell likewise found no apparent conflict between an RFC limitation of "simple, repetitive tasks" and level-two reasoning. 2018 WL 5660752, at *4 (collecting cases). In *Rainwater*, Magistrate Judge Frank H. McCarthy similarly found that although the DOT "employ[s]

---

[6] The court in *Ashley C.O.* also cited the holding in *Hopkins v. Berryhill,* No. 17-CV-155-GKF-FHM, 2018 WL 4945233, at *2 (N.D. Okla. July 9, 2018). *Hopkins*, however, involved more than just simple tasks—it also required the claimant be able to understand, remember, and carry out "simple 1-2 instructions." *Id.* As the undersigned has previously noted, this additional limitation generally rules out jobs with a reasoning level of two. *See, e.g., Taylor R.B. v. Kijakazi,* No. 20-CV-291-GKF-SH, slip R. & R. at 7-8 (N.D. Okla. Aug. 11, 2021), *R. & R. adopted* (N.D. Okla. Aug. 26, 2021).

the word 'detailed,' reasoning level 2 jobs are not inconsistent with" an RFC limitation of "being able to understand, remember, and carry out simple instructions." 2016 WL 11468941, at *2 (citing *Hackett*). Most recently, after briefing closed in this case, Judge Claire V. Eagan made a similar finding. In *Peggy S.C.*, Judge Eagan found an RFC limitation of "simple repetitive tasks" was consistent with jobs requiring level-two reasoning. 2021 WL 4148089, at *8 (citing *Hackett* and *Stokes*).

After careful consideration, the undersigned finds these case more persuasive than those relied on by Plaintiff. Notably, the decisions in *Ashley C.O.* and *Linda M.P.* did not cite to *Stokes*, reconcile their reasoning with its holding, or explain why the unpublished opinion might not be persuasive. Moreover, while the statement in *Hackett* may be dicta, the finding in *Stokes* is not—it was essential to the Tenth Circuit's decision to affirm.

The Tenth Circuit's decision in *Paulek* does not invite a contrary conclusion in this case. In *Paulek*, the court was faced with a situation where the jobs identified by the VE had a DOT reasoning level of three. 662 F. App'x at 594. However, the claimant was limited to the ability "to understand, remember and carry out simple <u>instructions</u>." *Id*. at 591. The *Paulek* court then noted with approval the finding from *Hackett* that "simple and routine work tasks ... seems inconsistent with the demands of level-three reasoning." *Id*. at 594 (quoting *Hackett*, 395 F.3d at 1176). But, the court seemed unsure whether that ruling—relating as it did to <u>tasks</u>—would apply in the case before it, which involved <u>instructions</u>: "While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions . . . ." *Id*. The court then noted the case of *Lucy v. Chater*—"the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning"—and went on to find a conflict in the case before it. *Id*. Again, this all occurred in the context

11

of a case involving <u>only</u> level-three reasoning jobs. The *Paulek* court did not find that either simple tasks or simple instructions was, in fact, contrary to a level-<u>two</u> reasoning job.[7]

The undersigned finds the holding in *Stokes* to be on point and persuasive and applies it here. There is no conflict between the RFC in this case and level-two reasoning, and the ALJ did not err in relying on the VE's testimony to determine Plaintiff could perform the addresser and touchup-screener jobs.

**B.     Sufficient Number of Jobs in the National Economy**

Nevertheless, the Commissioner's decision should be reversed. As noted above, the ALJ incorrectly relied on the job of document preparer in her decision. After eliminating this job from consideration, two jobs remain that do not present a conflict with the RFC. (R. 29 (addresser and touchup screener).) Having found an unresolved conflict between the RFC and one, but not all, the jobs identified by the VE, the undersigned must now examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, as there are 128,000 jobs remaining nationally. The undersigned finds the ALJ's error was not harmless, and as such, her findings at step five are not supported by substantial evidence.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers <u>either</u> in the region where the claimant lives or in several other

---

[7] As noted above, numerous courts <u>have</u> extended the holding of *Stokes* and the dicta of *Hackett* to cases involving simple <u>instructions</u> and level-two reasoning jobs. The undersigned finds this to be a logical leap, particularly given that *Lucy* is an off-point, out-of-circuit case, involving whether a claimant with borderline intellectual functioning required the testimony of a vocational expert to assess the impact of his non-exertional impairments or whether the ALJ could rely on the Guidelines alone to determine disability. 113 F.3d at 907-09. However, the undersigned need not make that decision in this case, where the RFC involved tasks, not instructions.

regions of the country. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a). Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992)). However, a reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145. A reviewing court should be cautious in applying harmless error in this context, *i.e.,* "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45.

As the Commissioner correctly indicates, the Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five was harmless error where the remaining nonconflicting jobs existed in sufficiently significant numbers in the national economy. *See, e.g., Shockley v. Colvin,* 564 F. App'x 935, 940 (10th Cir. 2014) (unpublished) (215,000 remaining jobs); *Johnson v. Comm'r,* 764 F. App'x 754, 761-62 (10th Cir. 2019) (unpublished) (178,000 remaining jobs); S*tokes,* 274 F. App'x at 684 (152,000 remaining jobs). Notably, at least as of six years ago, the finding in *Stokes*— 152,000 remaining jobs—was the lowest number the Tenth Circuit had found to satisfy the harmless error analysis. *See Evans v. Colvin,* 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) ("[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be

13

somewhere between 100 [statewide], the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000 [nationally], the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless error.").

In this case, the ALJ did not make a specific finding that the addresser and touchup-screener jobs separately existed in significant numbers in the national economy, but rather relied on the aggregate number of the three positions the VE identified—173,000. (R. 29.) Thus, affirming the ALJ's decision would require the <u>undersigned</u> to supply the determination that 128,000 combined addresser and touchup-screener jobs constitute a significant number of jobs in the national economy. Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that a combined total of 128,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder. . . could have resolved the factual matter in any other way." *Allen,* 357 F.3d at 1145. The ALJ's error at step five was not harmless.

## VI.   Conclusion and Recommendation

In sum, the undersigned Magistrate Judge finds that the ALJ did not apply the correct legal standards and that her decision is not supported by substantial evidence. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings consistent with this Report and Recommendation.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this Report and Recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 9, 2022.

If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*See also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule," which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 26th day of January, 2022.

_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**